Southern Wall Paper Paint Stores is a commercial partnership engaged in business in New Orleans in the sale of paints, wallpapers and other similar materials and supplies. The partners are Alfred Korns and Seymour J. Laney.
Allard Kaufmann, the defendant, owns a home in one of the residential areas of New Orleans. J. A. Harris is a contractor who, *Page 903 
in the summer of 1947, entered into a verbal contract with Kaufmann for the painting of certain parts of the interior of the Kaufmann residence and the partial painting of the front thereof. This contract was not recorded in the office of the Recorder of Mortgages for the Parish of Orleans and no bond was required of the contractor.
After the completion of the work, the plaintiff partnership, claiming that it had furnished paint and other material which had been delivered to the premises 1519 Calhoun Street and had been used in the work, and that it had not been paid, filed a lien which was recorded in M. O. B. 1683, folio 211, and filed this suit against Kaufmann, praying for personal judgment for $226.46. By supplemental petition, the plaintiff partnership sought personal solidary judgment against Kaufmann and Harris in the sum of $226.46 and prayed for recognition of its lien and privilege on the premises of Kaufmann, No. 1519 Calhoun Street. Plaintiff also prayed for attorney's fees at ten per cent and legal interest from judicial demand.
Harris made no defense, but Kaufmann filed exceptions of no cause of action and no right of action and, as required by the rules of the First City Court of New Orleans, at the same time filed answer, admitting that certain "improvements" had been made to his residence and that there had been no written contract, but denying all of the other material allegations regarding delivery by plaintiff partnership of any materials to his residence or the use of any such materials in the work which was done by Harris.
There was judgment against Kaufmann for $223.17, with legal interest from judicial demand, and with recognition of the lien as prayed for by plaintiff partnership, and there was also judgment against Harris in the sum of $226.46 and also with recognition of the lien against the Kaufmann residence, as prayed for. Kaufmann appealed from the said judgment. Harris did not.
Kaufmann frankly concedes that the work was done and that some paint dealer must have furnished the paint and supplies, but he asserts that nothing at all was delivered by plaintiff partnership, and he especially maintains that under no circumstances could there have been used in the work as much paint as is represented in the claim of plaintiff.
The record shows that in the doing of the work Harris employed Mitchell Weathers who seems to have been present at all times while the work was going on. Weathers says that the brand of paint used was sold in New Orleans at the store of plaintiff partnership but that at no time did he ever see any deliveries made to the premises by the partnership.
Mr. Kaufmann says that although he was not present at all times, while the work was going on he was living in the house and made it a practice to stay around home a little more than usual and that at no time did he ever see any deliveries made by plaintiff partnership. In fact, the only paint he ever saw which was used was that brought to the house by Harris.
Mrs. Kaufmann says that she was on the premises almost continuously while the work was going on and that at no time did she ever see deliveries made by the plaintiff partnership.
It also appears that several times, while the work was going on, Harris told Mrs. Kaufmann that he had to go to get paint and, at one time, he asked for money to buy paint and she gave him a check for $10, the proceeds of which were used by him.
Mr. Korns, one of the partners, says that all of the material was delivered at the residence of Mr. Kaufmann, and he produced what he would have us believe are dray receipts signed by Harris, showing that all of the material was delivered at the Kaufmann residence. On cross-examination, he admitted that he could not say of his own knowledge that the deliveries had been made. He stated that the forms used for these receipts were different from those which would have been used had Harris accepted delivery at the store and, he stated that he would produce some of the other forms from which it could be seen that there were two types of receipts. He did not produce the other forms. No employee was produced to testify that he had actually made the deliveries. *Page 904 
Mr. and Mrs. Kaufmann state that while the work was going on, Harris asked them if he might postpone the completion of their work while he carried out another contract which would require some ten days or so, and that Mr. Kaufmann consented to this and that Harris disappeared, apparently to carry out the other contract. Strangely enough, most of the paint and material which forms the basis of this suit was receipted for by Harris during that period.
Kaufmann testified that he had checked over pamphlets issued by various paint companies, and that he had carefully measured all surfaces painted in his residence, and that, according to those pamphlets, not more than twenty-three gallons of paint at the most could possibly have been used, and yet the claim includes forty gallons of paint. Mr. Rathbone DeBuys, an architect with many years of experience, testified along the same lines, stating that under no circumstances, in his opinion, could more than twenty-two gallons have been used, and that in making that estimate he had been very liberal.
We have given thought to the question of whether either of the parties should have produced Harris as a witness. Since Harris was made a party defendant with Kaufmann, it would ordinarily appear that it was the duty of Kaufmann to produce him. But it is obvious, from the contention that Kaufmann makes, that Harris would have been a hostile witness, for Harris no doubt would have testified that he used all of the paint in doing the work for Kaufmann. In view of the fact that it is Kaufmann's contention that, though the paint may have been bought by Harris, it was taken by him personally from plaintiff's store and used by him on other jobs, it could hardly be expected that Kaufmann would have produced him as a witness for his testimony would have destroyed that contention. We do not think, therefore, that the failure of Kaufmann to produce Harris could create any presumption against Kaufmann.
We think that the record fails to show that any of the paint or material was delivered at the premises of Mr. Kaufmann. It is true that he frankly concedes that some paint must have been used and his attitude indicates that he is perfectly willing to pay for such paint and material as was used, but we have no way of ascertaining just what would be the cost thereof because, in the statement produced by the plaintiff partnership, it appears that some types of paint are much more expensive than others. Any decree which we might render in favor of plaintiff would have to be for some definite fixed amount. Under the circumstances, we see nothing to do except to dismiss plaintiff's suit as of nonsuit and to order the erasure and cancellation of the recorded lien. This will afford plaintiff the opportunity of making another attempt to collect for such paint as it can prove was actually delivered to or used in the work.
The judgment appealed from, insofar as it runs against Allard Kaufmann and insofar as it maintains the lien against the premises No. 1519 Calhoun Street, is annulled, avoided and reversed, and the suit of plaintiff as against Allard Kaufmann is dismissed as of nonsuit, at the cost of plaintiff.
Affirmed in part.
Reversed in part as of nonsuit.